UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER P. HUDGINS,<br><br>              Plaintiff,<br><br>       vs.<br><br>LINDA S. McMAHON,<br>Commissioner of Social<br>Security,[1]<br><br>              Defendant. | No. CV-06-0134-AAM<br><br>**ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT,**<br>*INTER ALIA* |

**BEFORE THE COURT** are plaintiff's motion for summary judgment (Ct. Rec. 13) and the defendant's motion for summary judgment (Ct. Rec. 16).

## JURISDICTION

Christopher Hudgins, plaintiff, applied for Supplemental Security Income Benefits ("SSI") on December 19, 2002. The application was denied initially and

---

[1] As of January 20, 2007, Linda S. McMahon succeeded Jo Anne B. Barnhart as Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Linda S. McMahon is substituted as Defendant, and this lawsuit proceeds without further action by the parties.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-    1**

on reconsideration. After timely requesting a hearing, plaintiff, represented by counsel, appeared and testified before Administrative Law Judge ("ALJ") Paul Gaughen on March 24, 2005. Medical expert, W. Scott Mabee, Ph.D., testified, as did vocational expert Tom Moreland. On September 23, 2005, the ALJ issued a decision denying benefits. The Appeals Council denied a request for review and the ALJ's decision became the final decision of the Commissioner. This decision is appealable to district court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the plaintiff's and defendant's briefs, and will only be summarized here. At the time of the hearing, plaintiff was 27 years old. He has a high school equivalent education and no past relevant work experience. Plaintiff alleges disability since May 4, 1998, due to orthopedic impairments and mental problems.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence, 42 U.S.C. § 405(g)...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the

court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989), *quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

**ISSUES**

Plaintiff argues the ALJ erred in relying on the testimony of non-examining psychologist, W. Scott Mabee, Ph.D., in finding that plaintiff's non-exertional limitations arising from his mental impairments are not as severe as opined by an examining psychologist, James Bailey, Ph.D. As a result, plaintiff contends that the hypothetical which the ALJ presented to the vocational expert was inadequate because it did not incorporate the allegedly more severe limitations opined by Dr. Bailey. Alternatively, plaintiff contends the hypothetical presented by the ALJ to the vocational expert did not include all of the limitations opined by Dr. Mabee.

**DISCUSSION**

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i). If he is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v).

///

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-       4**

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found that plaintiff had "severe" impairments, including: depressive disorder, not otherwise specified (NOS); learning disorder, NOS; pain disorder associated with psychological factors and a general medical condition; and severe musculoskeletal impairments, status post left thoracotomy T9-10 with discectomy at T12-L1, debridement and fusion. The ALJ found, however, that plaintiff's impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1.

The ALJ found that plaintiff had the residual functional capacity to perform sedentary to light exertion. With regard to non-exertional limitations, the ALJ found plaintiff "should avoid highly social interaction with others" and that "[h]e is only capable of simple non-complex instruction and is unable to work at a production level pace." (Tr. at p. 29). Based on these exertional and non-exertional limitations, the ALJ found that plaintiff was capable of performing a significant number of jobs in the regional and national economies, as testified to by the vocational expert. Accordingly, the ALJ concluded the plaintiff was not disabled.

**NON-EXERTIONAL LIMITATIONS/MEDICAL ADVISOR**

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-    5

The conclusion of a non-examining physician, such as Dr. Mabee, does not constitute substantial evidence by itself.  See *Erickson v. Shalala*, 9 F.3d 813, 814 at n. 7 (9th Cir. 1993), and *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)("The non-examining physician's conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions and conclusions of an examining physician").  In *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995), the Ninth Circuit emphasized, however, that the testimony of a non-examining advisor need not be discounted and may serve as substantial evidence when supported by other evidence in the record and consistent with the other evidence.  The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician.  The Commissioner must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of an examining physician.  The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record.  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)(citations omitted).

Plaintiff was examined by psychologist James E. Bailey, Ph.D., in January 2004.  Dr. Bailey diagnosed the plaintiff with an adjustment disorder with depressed mood, learning disability not otherwise specified, and borderline intellectual functioning.  Dr. Bailey observed that plaintiff has a "spotty work history" and opined that his current Global Assessment of Functioning (GAF) score was 60, denoting "moderate" symptoms or moderate difficulty in social, occupational, or school function.  (Tr. at p. 182).[2]  According to Dr. Bailey:

> [Plaintiff's] activities of daily living are mostly independent. Socially, he relates adequately, however, he would be limited

---

[2] In October 2003, Kevin Shearer, M.A., of Psychological Services of Spokane, had assigned a GAF score of 50 to the plaintiff indicating "serious symptoms." (Tr. at p. 151).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT-    6**

> to superficial public contact. As to concentration and persistence, he is limited to simpler repetitive tasks. In terms of decompensation, he has had no clear work or work-like behavior in the past 12 months.

(*Id.*)

In an accompanying "Psychological/Psychiatric Evaluation" form prepared for the State of Washington Department of Social and Health Services (DSHS) in conjunction with plaintiff's application for public assistance, Dr. Bailey checked boxes indicating that plaintiff had a "mild" limitation in his ability to understand, remember and follow simple instructions; "moderate" limitations in his abilities to learn new tasks, exercise judgment and make decisions, and perform routine tasks; and a "marked" limitation in his ability to understand, remember and follow complex instructions. (Tr. at p. 185). With regard to social factors, as distinguished from the aforementioned cognitive factors, Dr. Bailey checked boxes indicating plaintiff had "moderate" limitations in his abilities to relate appropriately to co-workers and supervisors, respond appropriately to and tolerate the pressures and expectations of a normal work-setting, care for self, including personal hygiene and appearance, and control physical or motor movement; and that he had a "marked" limitation in his ability to interact appropriately in public contacts. (*Id.*). Per the DSHS form, "mild" limitations are those which do not significantly interfere with basic work-related activities, "moderate" limitations are those which significantly interfere with basic work-related activities, and "marked" limitations are those which very significantly interfere with basic work-related activities. (Tr. at p. 184).

Dr. Bailey saw the plaintiff again in February 2005. His diagnosis was essentially the same and he once again opined that plaintiff's GAF score was 60. (Tr. at p. 283). According to Dr. Bailey:

> [Plaintiff's] activities of daily living seem mostly independent. Socially, he would be able to have superficial contact but not complex contact with the public. As to concentration and persistence, he is

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-    7**

>> able to [do] simpler tasks with few academic demands. In terms of decompensation, he has had no work or work-like behavior in the past 12 months.

(*Id.*).

This time, in the accompanying DSHS "Psychological/Psychiatric Evaluation" form, Dr. Bailey indicated that plaintiff no longer had a "marked" limitation, but rather a "moderate" limitation in his ability to understand, remember and follow complex instructions. Dr. Bailey also indicated that plaintiff's limitation in his ability to interact appropriately in public contacts was no longer "marked," but rather "moderate," and that his limitation in his ability to control physical or motor movements and maintain appropriate behavior was no longer "moderate, but rather "mild." Otherwise, the cognitive and social limitations Dr. Bailey had indicated in the January 2004 form were the same as those he indicated in the February 2005 form. (Tr. at p. 287).

At the administrative hearing, Dr. Mabee, based on his review of the record relating to plaintiff's mental condition, and using Social Security's "Mental Residual Functional Capacity Assessment" as his reference,[3] opined that plaintiff, with a few exceptions, had only "slight" functional limitations (i.e., he was not significantly limited). The exceptions included "moderate" limitations in understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, working near others without being distracted by them, interacting with the public, accepting instruction and criticism from supervisors, engaging in extended complex types of interpersonal exchanges between co-workers, and adhering to standards of neatness and cleanliness. (Tr. at pp. 305-06). With regard to maintaining attention and concentration for extended periods, Dr. Mabee

///

---

[3] An example of this form is found at pp. 167-68 of the Transcript.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-      8**

explained that plaintiff would have some limitation with a "sustained effort over an hour or more period." (Tr. at p. 307).

In his written decision, the ALJ stated he was giving "limited weight" to the January 2004 and February 2005 "checklist form" assessments by Dr. Bailey:

> The assessments are a checklist form compiled for purposes of assessing the claimant's qualification for state public assistance under rules unrelated to this analysis. Also noted are the marks assigned in Exhibit 7F [January 2004 assessment] are not consistent with the narrative report given by the same clinician including the Global Assessment of Functioning of 60. In this report, the claimant is only diagnosed with an adjustment disorder versus any major depression. This report also provides a full narrative summary and report on standardized testing as well. Therefore, the narrative portion of Exhibit 7F is given greater weight and is basically in accord with the medical expert's [Dr. Mabee's] persuasive testimony.

(Tr. at p. 29).

The narrative portion of Dr. Bailey's January 2004 assessment opining that plaintiff was limited to superficial public contact and simpler repetitive tasks is indeed "basically in accord" with Dr. Mabee's testimony. Even more significant, however, is that both the narrative portion of Dr. Bailey's February 2005 assessment and the checklist form portion thereof are in accord with Dr. Mabee's testimony. As noted above, the checklist form portion of the February 2005 assessment, when compared to the checklist form portion of the January 2004 assessment, indicates improvement in several areas of mental functioning. Furthermore, no "marked" limitations are indicated on the February 2005 assessment, unlike the January 2004 assessment. It must also be noted that a GAF score of 60 is right at the borderline between "moderate" and "mild" symptoms. A GAF score of 61 is indicative of "mild" symptoms and "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well" and the individual "has some meaningful interpersonal relationships." *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-        9**

Text Revision 2000)(DSM-IV-TR). It is further noted that at the hearing, there was no testimony from the plaintiff or anyone else that plaintiff's mental problems, as opposed to his physical problems, were responsible for his inability to continue with a certain job. Indeed, because of plaintiff's "spotty work history," Dr. Bailey could not evaluate plaintiff's propensity for decompensation in the workplace since the plaintiff "had no work or work-like behavior in the past 12 months." (Tr. at p. 182 and p. 283).

In sum, Dr. Mabee did not reject Dr. Bailey's most recent assessment of plaintiff's mental functioning which must be accorded more weight than his prior assessment. Dr. Mabee's testimony is supported by evidence in the record and consistent therewith. Substantial evidence supports the ALJ's mental residual functional capacity determination as based on the opinion provided by Dr. Mabee.

**VOCATIONAL EXPERT HYPOTHETICAL**

"If a vocational expert's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

The hypothetical the ALJ presented to the vocational expert is consistent with and includes all of the limitations opined by Dr. Mabee (no limitations in superficial social interaction; slight limitation in remembering simple and short work-related instructions; moderate limitation in understanding and remembering complex instructions; slight limitation in showing up on time, presenting with the appropriate preparation and appearance, traveling to unfamiliar places and then adapting; cannot work at a production rate pace in basic work activities normally associated with "light" industry). (Tr. at p. 347). The inability to work at a production rate pace is consistent with the moderate limitation in maintaining attention and concentration for extended periods opined by Dr. Mabee. The

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-      10**

vocational expert identified jobs compatible with those limitations which exist in significant numbers in the national and regional economies, including light duty cashier with a sit-stand option, sedentary duty cashier with a sit-stand option, surveillance systems monitor, cleaner/housekeeper, and sales attendant. (Tr. at p. 348).

## CONCLUSION

Defendant's motion for summary judgment (Ct. Rec. 16) is **GRANTED** and plaintiff's motion for summary judgment (Ct. Rec. 13) is **DENIED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel.

**DATED** this  1st   of February, 2007.

     s/ Lonny R. Suko for and on behalf of
     ALAN A. McDONALD
     Senior United States District Judge